

**FILED**

FEB 2 6 2024

Bowen Greenwood
Clerk of Supreme Court
State of Montana

**FILED**

· 02/26/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0406

## SYNOPSIS OF THE CASE[1]

**2024 MT 36, DA 22-0406: MONTANA TROUT UNLIMITED, MONTANA ENVIRONMENTAL INFORMATION CENTER, TROUT UNLIMITED, EARTHWORKS, and AMERICAN RIVERS, Plaintiffs and Appellees, v. MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY and TINTINA MONTANA, INC., Defendants and Appellants.**

The Montana Supreme Court has upheld in a 5-2 decision a 2020 decision of the Montana Department of Environmental Quality (DEQ) to allow copper mining on privately owned land near the Smith River, overturning a District Court ruling that had invalidated the mining permit.

Tintina Montana applied in 2015 to construct and operate the Black Butte Copper Mine, an underground copper mine expected to conduct active mining for thirteen years, followed by four years for reclamation and closure. The DEQ spent five years in review of the application, rejecting it for deficiencies three separate times. After extensive review under the Montana Environmental Policy Act, involving a team of seventeen internal experts and forty-two outside consultants, including hydrologists, geologists, geochemists, engineers, and biologists, and two separate public comment periods—including seven public meetings—DEQ issued a Final Environmental Impact Statement and a permit for mining under the Montana Metal Mine Reclamation Act (MMRA). Several conservation organizations challenged the permit, and the District Court agreed with them that DEQ had failed to meet the requirements of law in granting the permit.

The Supreme Court held that Tintina had complied with the MMRA's requirements for a plan to ensure the safety and stability of its tailings storage facility and that DEQ made a scientifically driven decision after extensive analysis and testing. DEQ acted with substantial evidence and rational explanation when it found the Cemented Tailings Facility that Tintina proposes—adding cement for binder material to keep the mine waste in place, High Density Polyethylene liners to contain the tailings, and an extensive pump and drain system—was the "best available technology" with "proven success in mining" that, combined, will produce "a best-management practice that offers the greatest potential for a 'zero-failure' facility." DEQ appropriately required ongoing testing and monitoring, with on-the-ground adjustments to the amount of binder content as needed to respond to changing variables like temperature, humidity, precipitation, and ore characteristics.

The Court held also that DEQ did not violate the Montana Environmental Policy Act (MEPA) in considering how Tintina proposed to mitigate nitrogen releases to Sheep Creek—a tributary of the Smith River. DEQ prohibited discharge during the driest summer

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

months and required all discharges to go through an Underground Infiltration Gallery and attenuation through the "alluvial aquifer" (shallow sand and gravel deposits along Sheep Creek) before discharging to Sheep Creek. Even though some water discharged through the UIG before July 1 could eventually reach Sheep Creek, the DEQ evaluated this possibility and determined, with scientific support, that the slow rate of migration would allow nitrogen to attenuate in the soils before reaching the creek.

Finally, the Court determined that DEQ had adequately considered alternatives to the proposed method for tailings storage and made a reasoned decision when it chose not to require any other alternative.

The Court concluded that the agency met the legal requirements to consider all relevant data and to articulate a satisfactory explanation for its action. Under longstanding law, courts must give deference to agency expertise in evaluating conflicting data and may not substitute their own non-scientific judgment. After reviewing the extensive record DEQ compiled during its five-year review, the Supreme Court was satisfied that the agency made a reasoned decision that was supported by the evidence.

The dissent recognizes and gives credence to Montana citizens' constitutional right to a clean and healthy environment and the obligation of DEQ to interpret Montana's Environmental Protection Act and Montana Metal Reclamation Act in promotion of that constitutional right. DEQ failed to thoroughly investigate the environmental implications of the project such that DEQ's approval of the Black Butte mining permit was arbitrary and unsupported by substantial evidence. Despite the Court's attempt to bolster DEQ's review, the dissent highlights numerous ways in which DEQ failed to take a hard look at the environmental impacts of the proposed mine, violating Montanan's constitutional right to a clean and healthy environment. Unfortunately, the dissenting justices contend, the Court allows a project with potentially catastrophic consequences to one of Montana's most pristine and coveted outdoor resources to proceed despite inadequate analysis and data in several key areas critical to the safety of the project.

2